UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

304NMain LLC,

Plaintiff,

v.

City of Fostoria, Ohio,

Defendant.

Case No. 3:24-cv-424

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION

Plaintiff 304NMain LLC filed suit against Defendant City of Fostoria, Ohio, alleging that fire citations issued by Defendant and the requirement that Plaintiff obtain a certificate of occupancy have deprived it of all economically viable use of its property. (Doc. No. 7). Plaintiff contends that Defendant's actions constitute an improper taking under the Fifth Amendment to the United States Constitution and Article I, Section 19 of the Ohio Constitution. (*Id.* at 6). Defendant moved to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure (12)(b)(6). (Doc. No. 9). Plaintiff filed a brief in response, (Doc. No. 11), and Defendant filed a brief in reply. (Doc. No. 12). For the reasons stated below, I grant Defendant's motion to dismiss.

## II. BACKGROUND

Plaintiff is a limited liability corporation that owns real property located at 304 N. Main Street in the City of Fostoria, Ohio. (Doc. No. 7 at 1-2). Until October 30, 2023, the property was owned by Randy Cunningham and was classified "commercial" by the Seneca County Auditor's Office. (*Id.* at 2-3). Despite that commercial classification, Cunningham converted the bottom floor

of the building into storage space and renovated the second story into residential rental units. (*Id.* at 2). The complaint and attached exhibits indicate that Cunningham completed these renovations and moved tenants into the apartments without first obtaining an inspection or a certificate of occupancy.[1] (*Id.*); (Doc. No. 7-1 at 1).

After observing visible exterior changes to the structure, Chief Jason Root of the Fostoria Fire Department, along with the Seneca County Building Department, attempted to inspect the premises. (Doc. No. 7-2 at 3-4). Cunningham repeatedly denied them access. (*Id.*). Upon learning that Cunningham had moved tenants into the building without obtaining a certificate of occupancy, Chief Root issued a fire division citation. (Doc. No. 7 at 2); (Doc. No. 7-1). The citation directed Cunningham to obtain a certificate of occupancy and prohibited any changes in use or occupancy until he complied with all applicable codes.[2] (*Id.*).

Chief Root subsequently obtained and executed an administrative search warrant to inspect the premises for life-safety and code violations. (Doc. No. 7 at 2-3); (Doc. No. 7-2). Following the inspection, he issued an additional fire division citation and a serious hazard order. (Doc. No. 7 at 3); (Doc. No. 7-3); (Doc. No. 7-4). Once again, these enforcement actions required Cunningham to obtain a certificate of occupancy, comply with the Ohio Fire Code, satisfy zoning and health district requirements, and pass a follow-up life-safety inspection. (Doc. No. 7-3); (Doc. No. 7-4).

---

[1] Plaintiff attached 12 exhibits to its complaint. Generally, consideration of materials outside the initial complaint transforms a motion to dismiss into a motion for summary judgment. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citing Fed. R. Civ. P. 12(b)(6)). But I "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). While I must accept all well-pleaded factual allegations as true, where an exhibit attached to the complaint contradicts an allegation in the complaint, the exhibit controls. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (citing cases).

[2] Plaintiff incorrectly lists the date of the initial fire division citation as "June 15, 2024." The attached exhibits shows that the initial citation was issued June 15, 2023.

Subsequent inspections revealed that Cunningham was no longer using the building for storage or to house residential tenants. (Doc. No. 7 at 3); (Doc. No. 7-6). Consequently, Chief Root removed the fire citations and serious hazard order. (*Id.*).

Later, Cunningham established 304NMain LLC, of which he is the sole member. (Doc. No. 7 at 1). On October 30, 2023, citing concerns about potential personal liability, Cunningham conveyed title of the property to 304NMain LLC by quitclaim deed. (*Id.* at 3).

In January 2024, the Seneca County Auditor reclassified the property as a two-family residential building. (Doc. No. 7 at 4). Plaintiff alleges that because the Auditor classifies property based on the prior tax year, the reclassification operates "retroactively," meaning the property was technically a two-family residential property when Chief Root issued the 2023 citations. (*Id.* at 2, 4, 8). Plaintiff asserts that, because of this reclassification, it need not obtain a certificate of occupancy under either the Defendant's codified ordinances or any provision of the Ohio Administrative Code. (*Id.* at 4).

Based on this assumption, Plaintiff's counsel informed City Law Director Stephanie Kiser of Plaintiff's intent to lease the second-story units and requested written clarification of the Defendant's position. (Doc. No. 7 at 4); (Doc No. 7-8 at 2). Director Kiser responded that: (1) the City does not issue certificates of occupancy, and such requests must be directed to either Wood County or Seneca County Building Departments; (2) "it is the [Defendant's] position that no occupancy shall be allowed until all [Ohio Fire Code], building codes, zoning codes, and local ordinance requirements have been met"; and (3) Plaintiff should review the relevant provisions of the Ohio Fire Code. (Doc. No. 7 at 4) (Doc. No. 7-9 at 1).

Plaintiff alleges that it cannot lease its property without risking immediate enforcement action by Chief Root. (Doc. No. 7 at 5). Plaintiff further contends that, although the fire citations and serious hazard order were removed, the prior citations "cloud" the property's title and make it

impossible to rent, sell, or use the property for storage without imminent enforcement action. (*Id.* at 6). Plaintiff therefore alleges that Defendant has "completely deprived" it of all economic use of its property without just compensation, in violation of Article 1, Section 19, of the Ohio Constitution, and the Fifth Amendment of the United States Constitution. (*Id.*). Plaintiff seeks: (1) monetary damages; (2) a permanent injunction prohibiting Defendant from issuing fire, building, or zoning citations; (3) a writ of mandamus compelling Defendant to initiate a takings action; and (4) a declaratory judgment that Plaintiff is not required under any law to obtain a certificate of occupancy. (Doc. No. 7 at 8). Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 9).

## III. STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility

that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

## IV. ANALYSIS

Defendant argues: (1) Plaintiff's takings claims are not ripe for adjudication; (2) Plaintiff has failed to plausibly allege Defendant's conduct constitutes a taking; (3) injunctive relief is improper because Plaintiff has not suffered an actual or imminent injury; (4) Plaintiff lacks a clear legal right to a writ of mandamus; and (5) I should decline to enter a declaratory judgment because no actual controversy exists between the parties. (Doc. No. 9 at 10-25).

Plaintiff responds that: (1) the takings claims are ripe because Plaintiff filed a mandamus action, or alternatively, because Director Kiser acted as a "final arbitrator," who rendered a final decision denying occupancy; (2) the alleged unlawful prior citations and certificate-of-occupancy requirement render the property incapable of lawful occupancy or sale; (3) based on Defendant's prior conduct, an injunction is necessary to protect Plaintiff from possible civil or criminal liability; (4) mandamus is appropriate because it is a "factual prerequisite" for ripeness; and (5) a declaratory judgment is necessary to establish "that the Fire Code does not apply in the manner suggested by Defendant" and to avoid the imminent harm of incurring further citations. (Doc No. 11 at 8-11).

### A. RIPENESS

Defendant argues that Plaintiff's takings claims are not ripe for review because Plaintiff has not received a "final decision" from the relevant governmental authority indicating how the property will be regulated or a definitive ruling stating its property fails to meet regulatory standards and refusing to issue a certificate of occupancy. (Doc. No. 9 at 12). In response, Plaintiff relies on *Coles v. Granville*, 448 F.3d 853, 860-61 (6th Cir. 2006), arguing that seeking mandamus relief under Ohio law satisfies ripeness requirements. (Doc. No. 11 at 8). Alternatively, Plaintiff asserts that Director Kiser's communications constitute a final decision from the relevant government agency. (*Id.* at 9).

First, Plaintiff's reliance on *Coles* is misplaced. *Coles* applied the now-defunct requirement that a plaintiff must exhaust "reasonable, certain, and adequate" state remedies before a takings claim is ripe for federal adjudication. *Coles*, 448 F.3d at 860-61 (citing *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985)). While the *Coles* court held that seeking a writ of mandamus under Ohio law was an adequate state remedy, *id.* at 865, that exhaustion requirement was expressly overruled by the Supreme Court in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019), and plaintiffs no longer are required to exhaust any available state court remedies before filing suit in federal court.

That said, *Knick* left untouched the "finality" requirement laid forth in *Williamson County*. *Williamson Cnty.*, 473 U.S. at 186. A regulatory takings claim is not ripe until the plaintiff receives a final decision from the relevant government authority regarding application of the challenged regulation to the property. *Id.* The finality requirement is "relatively modest." *Pakdel v. City & Cnty. of San Francisco,* 594 U.S. 474, 478 (2021). De facto finality will do. *Id.* at 479. "All a plaintiff must show is that 'there [is] no question . . . about how the "regulations at issue apply to the particular land in question."'" *Id.* at 478 (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)) (alteration and omission in *Pakdel*) (further citation omitted by *Pakdel*).

Here, Kiser's written communications leave no uncertainty regarding Defendant's position. She stated unequivocally that "the City's position" is that "no occupancy shall be allowed until all [Ohio Fire Code], building codes, zoning codes, and local ordinance requirements have been met." (Doc. No. 7-9 at 1). By relaying "the City's position," Kiser was communicating under Defendant's authority. She further advised Plaintiff where to apply for a certificate of occupancy and directed Plaintiff to relevant provisions of the Ohio Fire Code. (*Id.*). These communications make clear that Defendant requires compliance with the applicable codes – including obtaining a certificate of

occupancy – before residential occupancy may occur. If Plaintiff fails to comply, enforcement action might follow.

Defendant contends that Kiser has no authority to issue or deny a certificate of occupancy and, therefore, Plaintiff's failure to apply for a certificate of occupancy "from the relevant building authorities" means Plaintiff never received a final decision on whether the property was in compliance with the Ohio Fire Code and other pertinent regulations. (Doc. No. 9 at 12). But Plaintiff's takings claim is not premised on a contention that it should be issued a certificate of occupancy. Rather, Plaintiff argues it is not required to obtain a certificate of occupancy at all and that Defendant's settled position that Plaintiff is not permitted to move any tenants into the property without such a certificate constitutes a final decision sufficient to satisfy the ripeness question.

Given the "relatively modest" finality threshold, I conclude that Kiser's statements constitute a final decision for purposes of ripeness. *See Pakdel*, 594 U.S at 478 (noting "there is no question about the city's position" that petitioner had to comply with regulation or risk enforcement action).

## B. RELEVANT ORDINANCES

Defendant argues that, under the Codified Ordinances of Fostoria, Plaintiff must comply with the Ohio Fire Code, the Ohio Building Code, and the Ohio Administrative Code, including the requirement to obtain a certificate of occupancy. (Doc. No. 9 at 13-11). Defendant further contends that Plaintiff has failed to plausibly allege that enforcement of these safety codes constitutes a regulatory taking. (*Id.* at 15-18).

Plaintiff asserts that "[t]here is no requirement under the Ohio Administrative Code nor the Defendant's Codified Ordinances that Plaintiff is required to obtain a 'Certificate of Occupancy' for the property," and that no such requirement existed in 2023. (Doc. No. 7 at 5). Thus, "[t]he prior

Fire Citations and Serious Hazard Order place a cloud on the title to the property," rendering the property "worthless." (*Id.*)

Chapter 1501 of the Codified Ordinances of the City of Fostoria incorporates the Ohio Fire Code, and provides:

> **1501.01 ADOPTION.**
>
> There is hereby adopted by the Municipality, the 2017 Codified Fire Code (OFC) as adopted by the Ohio Division of State Fire Marshal, Department of Commerce, that was effective December 15, 2017.

Fostoria, Ohio, Codified Ordinances § 1501.01 (2024)

The codified ordinances further dictate:

> **1501.12 CONFLICT.**
>
> (a) The rules of the Ohio Board of Building Standards including the Ohio Basic Building Code shall supersede and govern any order, standard or rule of the Department of Commerce, Division of State Fire Marshal including the Ohio Fire Code, in all cases where such orders, standards or rules are in conflict with such rules or the Ohio Basic Building Code . . . .

Fostoria, Ohio, Codified Ordinances §1501.12(a) (2024)

The Ohio Administrative Code, which encompasses both the Ohio Fire Code and Ohio Building Code, stipulates:

> (b) **101.2.2 Activities, locations and persons subject to the Ohio Fire Code.** Unless specifically exempted or as limited by federal or state law or this code, **t**he provisions of this code are intended to safeguard life and property from fire and explosion and shall apply to all aspects of fire safety at any structures, building, premises, vehicles or other locations within the territorial jurisdiction of the State of Ohio. The scope of this code includes, but is not limited to, property owned by the State of Ohio or other political subdivisions of the state, [and] all residential premises (including, but not limited to, one, two and three family dwellings) . . . .

Ohio Admin. Code 1301:7-7-01, Section 101.2.2(b)

As relevant here, the Ohio Fire Code and Ohio Building Code impose permit and inspection requirements when a property owner alters a structure or changes its use:

> (c) **102.3.3 Change of use or occupancy**. Changes shall not be made in the use or occupancy of any structure that would place the structure in a different division of the same group or occupancy or in a different group of occupancies, unless such structure is made to comply with the requirements of this code . . . .

Ohio Admin Code 1301:7-7-01, Section 102.3.3(c) (emphasis omitted)

> **105.1. Approvals required.** Any owner or owner's representative who intends to construct, enlarge, alter, repair, move, or change the occupancy of a building or structure, or portion thereof, or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical, plumbing system, other building service equipment, or piping system the installation of which is regulated by this code, or to cause any such work to be done, is to first make application to the building official and obtain the required approval.

Ohio Admin. Code 4101:1-1-01, Section 105.1

> **111.1 Approval required to occupy.** No building or structure, in whole or in part, may be used or occupied until the building official has issued an approval in the form of a certificate of occupancy or certificate of completion in compliance with this section.

Ohio Admin. Code 4101:1-1-01, Section 111.1

> **111.1.1.2 Change of occupancy.** Change of occupancy of an existing structure is not permitted to be made except as specified in Chapter 34. A building or structure hereafter changed, in whole or in part, from one occupancy to another is not to be occupied for the new occupancy until the certificate of occupancy has been issued by the building official reflecting such changed portions.

Ohio Admin. Code 4101:1-1-01, Section 111.1.1.2

The plain language of these provisions makes clear that when an owner alters the occupancy or use of its building, the owner must obtain appropriate inspections, approvals, and a certificate of occupancy before the building may be lawfully occupied.

Taking the allegations contained in the complaint as true, before Plaintiff's acquisition of the property, the building was classified as commercial. (Doc. No. 7 at 2). Cunningham made structural changes to the building and altered its use from "commercial" to "residential" without first obtaining required permits or approvals. (*Id.*); (Doc. No. 7-8 at 1). Upon completion of renovations, he failed to obtain a certificate of occupancy reflecting the change. (Doc No. 7 at 2-3).

He also repeatedly obstructed inspection efforts by city and county officials. (Doc. No. 7-2 at 3-4). Since acquiring the building, Plaintiff has not obtained the necessary inspections or a certificate of occupancy. (Doc. No. 7 at 5); (Doc. No. 7-9 at 1). Given the plain language of the applicable codes, and accepting the factual allegations in the complaint as true, Plaintiff has failed to plausibly allege it need not submit its building to inspection, obtain a certificate of occupancy, or that its property complies with the applicable codes.

Regarding Plaintiff's allegation that the prior citations create a "cloud" on its property's title, "[a] cloud on title has been defined as a title or encumbrance apparently valid, but in truth invalid." *Carr v. Acacia County Club Co.*, 970 N.E.2d 1075, 1089 (Ohio Ct. App. 2012). Further, an encumbrance is "[a]ny right, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee by conveyance." *Id.* at 1092 n.23 (citation omitted). Examples include "[a] claim, lien, charge, or liability attached to and binding real property, e.g. a mortgage; judgment lien; mechanics lien; lease; security interest; easement or right of way; accrued and unpaid taxes." *Id.*

In comparison, the citations – which Chief Root has since removed – were standard regulatory enforcement actions addressing building safety and property use. Because the complaint fails to show the citations were an invalid encumbrance, or any other invalid claim of right or interest in the land, Plaintiff has failed to plausibly allege the prior citations "clouded" title.

### C. Regulatory Taking

As I noted above, Director Kaiser's position regarding the applicability of Defendant's fire and building codes is sufficiently definitive to satisfy the "finality" requirement for a regulatory takings claim. *See Pakdel*, 594 U.S. at 478 (2021). That conclusion, however, does not resolve whether the complaint plausibly alleges that those regulatory requirements effect a taking.

Defendant argues that Plaintiff has failed to plausibly allege it has been deprived of all economic use of its property. (Doc. No. 9 at 16). Defendant asserts that the complaint does not contain allegations showing Plaintiff has attempted to market or sell the property, making its claim that the property is "worthless" a "'naked assertion,'" which need not be accepted as true. (Doc. No. 9 at 16) (quoting *Twombly*, 550 U.S at 557). Defendant further contends that Plaintiff has failed to plausibly allege facts showing that acquiring a certificate of occupancy would have a negative economic impact or interfere with reasonable investment backed expectations. (*Id.*).

Plaintiff responds by reiterating that its position that it need not obtain a certificate of occupancy and that, by imposing such a requirement, Defendant is preventing it from using the property for its purpose, which is the equivalent of an "ousting." (Doc. No. 11 at 10). Plaintiff further claims that the prior citations make the property impossible to sell or to warrant title, and therefore, the property is without value. (*Id.*).

The Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Supreme Court recognizes two principal categories of takings. The first is a physical taking, which occurs when the government physically appropriates private property for the purpose of public use. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021). The second category, alleged here, is a regulatory taking.

The takings clause does not prohibit the government from regulating private property; it requires compensation only when a regulation is so burdensome that it effectively becomes "a direct appropriation [of] or ouster" from private property." *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 537 (2005). In other words, although governments may regulate property pursuant to their police powers, a regulation may effect a taking if it "goes too far." *Pa. Coal Co. v. Mahone*, 260 U.S. 393, 415 (1922).

The Supreme Court has identified two analytical frameworks for evaluating regulatory takings claims. First, a per se taking occurs when a regulation deprives a property owner of "all economically productive or beneficial uses" of its land. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992). Such cases are "extraordinary" and "relatively rare." *Id.* at 1017-18. Typically, a plaintiff must show "the complete elimination" of the property's value. *Lingle*, 544 U.S. at 539.

Second, in the absence of a total deprivation of value, courts apply a multifactor test articulated in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). This analysis considers: (1) the economic impact of the regulation; (2) the extent to which the regulation interferes with "distinct investment-backed expectations"; and (3) "the character of the governmental action." *Id.* at 124.

**1. Total Deprivation**

Plaintiff asserts, in a conclusory fashion, that its property has been rendered "worthless" due to the alleged clouding of title and the property's "inability to be used for residential rental purposes and storage." (Doc. No. 7 at 5). But Plaintiff pleads no facts supporting that conclusion. It does not allege, for example, that Plaintiff sought to market or sell the property and could not do so, or that the property cannot be used for any other lawful purpose.[3] Absent such factual allegations, Plaintiff's assertion that the property has no economic value amounts to a legal conclusion that I need not accept as true. *See Twombly*, 550 U.S. at 555. Moreover, while Plaintiff argues the inability to use its property for storage or to house tenants constitutes a taking, denying a landowner of the "most profitable use" of its land does not qualify as such. *Penn Central*, 438 U.S. at 120.

[3] In its response to Defendant's motion to dismiss, Plaintiff alleges for the first time that "[a]fter the Amended Complaint was filed, Plaintiff was denied an offer to [sell] because of the issues the Defendant created with the Fire Citations." (Doc. No. 11 at 6 n.10). But "[a] plaintiff may not amend his complaint by adding factual allegations as a part of a response in opposition to a motion to dismiss." *Am. Ass'n of Nurse Anesthesiology v. Robert F. Kennedy, Jr.*, No. 1:24-CV-1657, 2025 WL 2459208, at *5 (N.D. Ohio Aug. 26, 2025) (citations omitted).

I conclude the complaint fails to provide sufficient facts showing Plaintiff has been deprived of all economically beneficial use of its land. *See Bojici v. DeWine*, 569 F. Supp. 3d 669, 690-91 (N.D. Ohio 2021) (dismissing takings claim where plaintiff failed to allege facts supporting conclusory allegation that it was deprived of all economically beneficial use of land); *see also TJM 64, Inc. v. Harris*, 526 F. Supp. 3d 331, 337 (W.D. Tenn. 2021) (finding plaintiff failed to demonstrate a total loss of property value due to Covid-19 restrictions because they chose "not to pursue other business alternatives").

**2. Penn Central Factors**

**a. Economic impact**

Defendant argues that the complaint does not contain sufficient facts showing Plaintiff would sustain a negative economic impact if required to obtain a certificate of occupancy. (Doc. No. 9 at 17).

As I noted above, Plaintiff has failed to plausibly allege it is unable to sell its property. Accepting the remaining allegations in the complaint as true, Plaintiff's residential units previously generated $2,400 per month in rental income. (Doc. No. 7 at 2). Even assuming that Defendant's insistence Plaintiff obtain a certificate of occupancy delays its ability to lease units – thereby momentarily diminishing the value of the property – "diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr.*., 508 U.S. 602, 645 (1993). Plaintiff does not plausibly allege any other facts showing a negative economic impact caused by Defendant's insistence that Plaintiff comply with the applicable codes and ordinances.

**b. Distinct investment-backed expectations**

Defendant contends that had Plaintiff conducted itself in a manner consistent with other contractors, it would have sought to comply with Defendant's directive to meet Ohio Fire Code and

Ohio Building Code provisions. (Doc. No. 9 at 17). In its view, Plaintiff should have contacted relevant building officials to obtain the information needed to properly plan for compliance costs and scheduled a final inspection to obtain a certificate of occupancy. (*Id.*). Instead, Plaintiff refused to obtain the necessary permits and moved forward with renovations. (*Id.* at 17-18). Thus, Defendant argues that any economic impact or interference with investment-backed expectations is not due to Defendant's unconstitutional conduct, but to Plaintiff's "poor business planning and hasty construction." (*Id.* at 18).

Plaintiff responds that Defendant is blaming Cunningham for poor business practices, but Cunningham is not a party to this case. (Doc. No. 11 at 11 n.16). Plaintiff also alleges Cunningham did his "due diligence" by speaking with "a relevant City official" before renting the property. (*Id.*).

Investment-backed expectations are evaluated objectively, and "must be more than a unilateral expectation or abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984). Plaintiff alleges that Cunningham was told by an unnamed "Compliance Officer" that he would not need a certificate of occupancy before moving in tenants. (Doc. No. 7 at 2). But, as Plaintiff concedes, Cunningham is not a party to this action. (Doc. No. 11 at 11). And Plaintiff does not allege that it acquired the property in reliance on that statement. To the contrary, Plaintiff states that it acquired the property under an LLC to mitigate potential personal liability. (Doc. No. 7 at 3).

Accepting the facts in the complaint as true, Plaintiff was aware of the prior citations and Defendant's requirement for code compliance at the time it acquired the property—notwithstanding any assurances offered to Cunningham. The complaint fails to show that Plaintiff's expectations of bypassing the certificate of occupancy were objectively reasonable. *See Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 685 (6th Cir. 2004) (finding plaintiffs could not have reasonably expected higher returns because they were "well aware" of the regulatory allocation and distribution scheme "prior to making any investments"); *West v. City of Eastpointe*, No. 23-12757, 2026 WL 882760, at *17 (E.D.

Mich. Mar. 31, 2026) (concluding plaintiff failed to plausibly allege defendant's enforcement of building and fire codes interfered with plaintiff's "'investment-backed expectations'" because "an expectation that he be permitted to continue violations of a city's fire codes without consequence is unreasonable"). Thus, I conclude Plaintiff has failed to plausibly allege that Defendant interfered with its reasonable investment-backed expectations.

**c. Character of the Government Action**

Finally, Defendant argues that "[t]he application of routine safety regulations contained in building and fire codes is not a regulatory taking." (Doc. No. 9 at 15). Defendant notes that the purpose of the *Penn Central* test is to "'identify governmental regulatory actions that are functionally equivalent to the classic taking in which the government directly appropriates private property or ousts the owner from his domain.'" (Doc. No. 9 at 18) (quoting *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 457 (6th Cir. 2009)) (further citation omitted). (*Id.*). Plaintiff has not requested an inspection, applied for a certificate of occupancy, or alleged that "it has been the subject to any adverse determination or ruling." (*Id.*). Thus, Defendant argues Plaintiff failed to allege conduct constituting the "functional equivalent" of a "classic taking." (*Id.*). Plaintiff contends that because the property can no longer be sold or used, Plaintiff has been functionally "ousted." (Doc. No. 11 at 10).

The character of the governmental action is "a critical factor" in a takings analysis. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 488 (1987). "[A] taking is more likely to occur . . . when the government action lacks a legitimate public purpose." *Lifestyles Cmtys, Ltd. v. City of Worthington,* 165 F.4th 1013, 1024 (6th Cir. 2026) (citing *Keystone*, 480 U.S. at 485-86). States have an "important interest" in "the enforcement of local or municipal ordinances relating to health, safety, and welfare of its citizens." *Horvath v. City of Barberton Bldg. Dep't,* No. 5:22-cv-1387, 2023 WL 4706730, at *4 (N.D. Ohio Jul. 23, 2023) (citing *Lighthouse Cmty. Church of God v. City of Southfield*, 382

F. Supp. 2d 937, 940 (E.D. Mich. 2005) ("The safety and welfare of its citizens, which the local [building] ordinances address, are . . . important state interests.")) (further citation omitted) (alteration and omission by *Horvath*). Further, "the public has a strong interest in trusting that the buildings they enter are within the fire and occupancy code." *Bazzy Invs. v. City of Dearborn*, No. 16-10879, 2018 WL 10962765, at *7 (E.D. Mich. Aug. 2, 2018).

Here, Defendant has not denied Plaintiff a certificate of occupancy; it has simply required compliance with generally applicable fire and building safety codes. The complaint fails to plausibly allege that the challenged codes serve any objective other than the legitimate purpose of ensuring public safety and welfare.

Nor has Plaintiff plausibly alleged that Defendant's conduct is the functional equivalent of a taking. Applying the *Lucas* standard and *Penn Central* factors, I conclude that Plaintiff has failed to plausibly allege a regulatory taking. *Cf. Jackson v. Davis*, 530 F. Supp. 2, 6 (E.D. Tenn. 1981) (concluding that the enforcement of "governmental regulations designed to promote the public safety and general welfare of citizens" did not constitute a regulatory taking) (*aff'd without opinion*, 667 F.2d 1026 (6th Cir. 1981)).

### D. Ohio Taking Claim

Plaintiff alleges that Defendant's conduct violates Article 1, Section 19 of the Ohio Constitution. (Doc. No. 7 at 6). Given that Ohio courts apply the *Penn Central* balancing test to state-law takings claims, the same deficiencies that defeated Plaintiff's federal takings claim also prove fatal to the state-law claim. *See Lifestyle Cmtys*, 165 F.4th at 1028 n. 2 (citing *State ex rel. R.T.G., Inc. v. State*, 780 N.E.2d 988, 1005-06 (Ohio 2022)) (further citing *Penn Cent.*, 438 U.S. at 124).

### E. Injunctive Relief

Plaintiff seeks injunctive relief, requesting that I order Defendant to cease issuing fire, building, and zoning citations. (Doc. No. 2 at 4). An injunction is a form of equitable relief, not an

independent cause of action. *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013); *see also Bresler v. Rock*, 117 N.E.3d 184, 194 (Ohio Ct. App. 2018) ("In general, injunctive relief is a remedy, not a cause of action."). And Plaintiff has failed to plausibly allege a claim on which relief may be granted. Thus, I deny Plaintiff's request for injunctive relief. *See Cap. Equity Grp. v. Ripken Sports Inc.*, No. 1:16CV1953, 2017 WL 4155766, at *7 (N.D. Ohio Sept. 19, 2017) (denying injunctive relief because it is a remedy that requires a "viable underlying cause[ ] of action"); *cf. Shaya v. Countrywide Home Loans Inc.*, 489 F. App'x 815, 819 (6th Cir. 2012) (affirming dismissal because quiet title is a remedy rather than a separate cause of action, and the court had properly dismissed all claims).

### F. Writ of Mandamus

Plaintiff further requests a writ of mandamus to compel Defendants to file a takings action pursuant to O.R.C. §2731.01. (Doc. No. 2 at 4). "'The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations where the petitioner can show a clear and indisputable right to the relief sought.'" *Gresham v. Corr. Medical Servs., Inc.*, 650 F.3d 628, 630 (6th Cir. 2011) (quoting *In re Am. President Lines, Ltd.*, 929 F.2d 226, 227 (6th Cir. 1991)). Based on the reasons above, I conclude Plaintiff has failed to plausibly allege a clear legal right to relief. Thus, I deny Plaintiff's request to issue a writ of mandamus.

### G. Declaratory Judgment

Lastly, Plaintiff seeks a declaratory judgment under O.R.C. § 2721.01 declaring that it is not legally obligated to obtain a certificate of occupancy under any applicable law or regulation. (Doc. No. 7 at 8).

As I noted above, based on the plain language of the ordinances in question, Plaintiff has failed to show it need not obtain a certificate of occupancy. Because Plaintiff's request for declaratory judgment depends on its ability to state a claim, I dismiss the claim. *See Moody v.*

*CitiMortgage*, 32 F. Supp. 3d 869, 876 (W.D. Mich. 2014) (dismissing claim for declaratory judgment where court addressed and dismissed underlying claim); *see also Mindale Farms Co. v. City of Tallmadge*, No. 5:23-CV-424, 2024 WL 1209906, at *9 (N.D. Ohio Mar. 20, 2024) (dismissing request for declaratory judgment where plaintiff's substantive underlying claims failed).

## IV. CONCLUSION

For the reasons stated above, I grant Defendant the City of Fostoria's motion to dismiss Plaintiff 304NMain LLC's takings claims and claim for declaratory judgment. (Doc. No. 7). This case is dismissed with prejudice.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge